GLENN WILKINSON, chairman, et al., members of BOARD OF SUPERVISORS OF DAVIS COUNTY, acting as trustees of Fox River Drainage Districts Nos. 1, 2 and 3, appellants, v. RUSSELL HEALD et al., Board of Trustees of Fox River Drainage District No. 1, appellees.

No. 51225.

(Reported in 127 N.W.2d 622)

APRIL 8, 1964.

Richard H. Wright, of Bloomfield, for appellants.

James W. McGrath, of Keosauqua, for appellees.

THORNTON, J.—Plaintiffs are the members of the Board of Supervisors of Davis County acting as trustees of Fox River Drainage Districts Nos. 1, 2 and 3 in Davis County. Defendants are the members of the Board of Trustees of Fox River Drainage District No. 1, Van Buren County. For convenience we will refer to them in the singular.

The Fox River has its source in Appanoose County and flows southeasterly through Davis and Van Buren Counties in Iowa and through Missouri to the Mississippi River. Years ago the drainage districts were established. The three Davis County districts are connecting. The easterly one is District No. 1, it extends easterly to within one fourth of a mile of the Van Buren County line. The Van Buren County district commences at the county line between Davis and Van Buren County and extends southeasterly sixteen and two-thirds miles through Van Buren County and a little more than a mile and a half into Missouri to the Harper Bridge site where its waters are returned to the natural channel of the Fox River.

The parties stipulated in part as follows:

"That the downstream end of said improvement carries the combined waters of the three of said districts [Davis County districts] to a point where said improvement enters Van Buren County and the improvement of Fox River Drainage District No. 1 in Van Buren County approximately 165 feet north of the Northwest Corner of the Southwest Quarter of the Northwest Quarter of Section six, Township sixty-eight, Range eleven, making a continuous improved channel through Davis and Van Buren Counties."

The downstream end of the Van Buren County district, from the Harper Bridge site upstream 16,000 feet, became filled by weeds, vegetable growth, silt and debris to the point where

its original efficiency was impaired. After preliminary investigation defendant board determined the ditch should be cleaned and instituted proceedings under section 455.142. (All references herein are to the Code of Iowa, 1958. The expenditures were made or contracted for before the effective date of the 1962 Code. There has been no change in the pertinent sections.) Notice was given. Commissioners were appointed to apportion the benefits and hearings held by defendant on the report of the commissioners. The report apportioned the cost of the repair work among the four districts in proportion to the cost of the original improvement in each district. This resulted in the total cost of $26,424.86 being assessed $10,671.20 to defendant district and $15,753.66 to plaintiff's districts. Plaintiff filed objections before defendant and appealed to the district court from the approval of the report. The district court affirmed the decision of defendant and plaintiff appeals to us.

Plaintiff urges two propositions for reversal. Its first is that the districts do not outlet into the same ditch, drain or natural watercourse as contemplated in section 455.142; the second that the cost of the repair work was apportioned on the same benefit formula and basis as cost was apportioned on the original improvements on all four districts, when it should have been apportioned on the basis of benefits derived on the condition of the land as it existed just prior to and at the construction of the improvement for which the assessment was being made.

I. Section 455.142 in pertinent part provides:

"When two or more drainage districts outlet into the same ditch, drain, or natural watercourse and the board determines that it is necessary to clean out, deepen, enlarge, extend, or straighten said ditch, drain, or natural watercourse in order to expeditiously carry off the combined waters of such districts, the board may proceed as provided in section 455.135. * * * Each district shall be assessed for the cost of such work in proportion to the benefits derived."

Because there is a quarter-mile break between the easterly end of Davis County District No. 1 and the westerly end of the Van Buren County district, plaintiff contends its districts do

not outlet into the Fox River, the natural watercourse, with the Van Buren district. In argument it states its position thus:

"It is our contention that the aforesaid statute [section 455.142] has no application to the present controversy between the Van Buren County district and the three Davis County districts. This is based upon the reason that the Van Buren County district does not provide a complete and final disposition and disposal of the combined waters, nor are the districts contiguous and connecting, nor are they a part of [a] complete drainage plan."

In stating the questions presented on appeal it states: "* * *, where the upper districts do not in fact connect directly to the Van Buren County District, even though the combined waters of the upper districts do eventually discharge into the Van Buren County District."

In its statement of facts plaintiff states the combined waters of the Davis County district are returned to the original channel of the Fox River to the county line where the waters enter the Van Buren County Drainage District, and it was stipulated the districts make a continuous improved channel through the two counties.

There is no evidence other than the stipulation. So all the trial court had before it, or we have before us, are the pleadings with attached exhibits and the stipulation. From these it is clear that all the water from the Davis County districts does flow through the Van Buren Drainage District even though the water is returned to the Fox River for a quarter of a mile before it enters the Van Buren County district. It thus has the same effect of carrying silt and debris to the Van Buren district as it would have if the districts actually connected.

In Board of Trustees of Monona-Harrison Drainage District No. 1 v. Board of Supervisors of Monona County, 236 Iowa 690, 694, 19 N.W.2d 196, 198, 199, we said:

"We are also unable to agree with defendants' claim that section 7563 [now section 455.142] applies only to those districts which outlet directly into the lower district.

"On the first appeal of this very case we said, in referring

to the upper districts, Board of Trustees v. Board of Supervisors, supra, 228 Iowa 1095, 1097, 291 N.W. 141, 142:

" 'They are tributary to and empty their waters into the main ditch of the Monona-Harrison district, *either directly or indirectly*. In the course of time *the outlet*, the Monona-Harrison ditch fills up, and it is necessary to clean it out. * * * *it being the outlet for the other districts*.' (Italics supplied.)"

See also discussion and authorities on page 695 of 236 Iowa, page 199 of 19 N.W.2d. We think it is apparent the four districts outlet into the same natural watercourse.

II. Plaintiff, in support of its second contention that apportionment of the cost of the repair work on the same benefit basis as cost of the original improvement on the four districts was error, cites Mayne v. Board of Supervisors of Pottawattamie County, 208 Iowa 987, 995, 223 N.W. 904, 225 N.W. 953, 954. And urges under the stipulated facts only the lower 16,000 feet of the Van Buren district was not functioning properly and adequately.

From the Mayne case plaintiff cites us to the supplemental opinion on rehearing at page 995 of 208 Iowa, pages 953, 954 of 225 N.W. We said:

"It appears that, when this assessment was made, it was preceded by an order that the land be reclassified. It further appears that it was reclassified on the basis of the natural topography of the land as it existed prior to the construction of any of the improvements in this district. This was error. It should have been classified on the condition of the land as it existed just prior to and at the construction of the improvement for which the assessment was being made."

This statement was not made in relation to a reclassification of the land in the upper district. The original opinion discloses the lower district was first constructed. After the upper district was constructed the lower district could not carry the added flow of water caused by the straightening of the natural watercourse in the construction of the upper district. It was necessary to repair and widen the lower ditch. The land in the lower district was reclassified and the entire cost of the repair work assessed against the lower district. The appeal was by the land-

·owners in the lower district. They were objecting to the reclassification and the failure to assess any of the cost to the upper district. The above statement on rehearing related to the reclassification in the lower district. It should be noted this court then held it was error not to assess any of the cost to the upper district. · It is also there pointed out, page 994 of 208 Iowa, page 907 of 223 N.W., that the whole matter is governed by statutory regulation and not by the general doctrine of servient and dominant estate.

In Coe v. Board of Supervisors of Harrison County, 229 Iowa 798, 800, 295 N.W. 151, 153, we approved the formula used. We said:

"It should be stated that the apportionment of these costs and expenses was made upon the same basis as were the apportionments of the cost of the original constructions, the Board having found that such apportionments furnished a fair and equitable basis and that no good reason appeared why a new and different one should be adopted."

III. In the stipulation is the following, "* * * Van Buren County ditch * * *, from its downstream end * * *, upstream approximately 16,000 feet, had been completely filled by weeds, vegetable growth, silt and debris to the point where its original efficiency had been impaired and completely destroyed. That it was not carrying at all, let alone expeditiously, the combined waters of the upstream area, * * *."

Plaintiff argues there is no evidence the remaining portion of the Van Buren County district was not functioning properly. And the combined improvement is 42 miles long, the nearest Davis County district is 15 miles away and little or no assessment should be made against the upper districts, that it is apparent the benefits rapidly decline as you go farther away from the repair work.

It is a fair inference from the facts stated in the stipulation above that the flow of water from the upper districts caused the silting and debris, and the flow of water from such districts was slower and not expeditiously carried off due to such condition.

There was no other evidence bearing on the benefits except the report of the commissioners. We have uniformly held

the report of commissioners under this chapter, when approved by the board and district court, is presumed to be correct and the burden is on the objector to show the cost was not properly assessed. Martin v. Board of Supervisors of Polk County, 251 Iowa 579, 583, 100 N.W.2d 652; Chicago & Northwestern Railway Co. v. Dreessen, 243 Iowa 397, 402, 52 N.W.2d 34, 36, 37; and Fulton v. Sherman, 212 Iowa 1218, 1220, 1221, 238 N.W. 88, 89. Plaintiff has not carried this burden. As pointed out by the trial court no other formula has been suggested.

It follows the decree of the trial court must be and is hereby —Affirmed.

All JUSTICES concur.